Good morning, ladies and gentlemen. This is the time for argument in the rehearing on Bank, the case of Villa v. Lever. We understand that the counsel is ready to present argument. Judge Gould and Fischer are with us by telephone, and Judge Berzon is not available for this argument, but we have a good group here. And we will proceed to hear the case. Ms. Perales, if you will proceed. Thank you, Your Honor. May it please the Court. My name is Nina Perales. I represent plaintiffs appellants Padilla, Sanchez, and Andrade. I'd like to reserve five minutes of my time for rebuttal, if I may. The question before the Court is whether Section 203 of the Voting Rights Act applies to that part of the electoral process in which registered voters decide whether to place on the ballot the recall of an elected official. The question is primarily one of statutory interpretation. Section 203 requires that voters be allowed to read and consider a translated recall petition form for three reasons. First, the act of deciding whether a recall will go on the ballot is reserved exclusively to registered voters and is an integral part of the electoral process in a direct democracy system. Second, the State's heavy involvement in dictating the form's content and structure means that it is provided by the State. And third, when you read Section 203 in the context of the Voting Rights Act, you can see that Congress intended it to be read broadly to achieve its remedial purposes. Ms. Perales, is this case moved by virtue of the fact that the election has already been conducted, the school board member has been recalled and requested to take his place? What relief can we possibly award at this point to the plaintiff? At this point, the plaintiff's appellants seek declaratory relief. The claim for injunctive relief is moot because a subsequent election has already been held. But with respect to the claim for declaratory relief, because the issue is likely to arise again, it is capable of repetition, yet evading review. But how does that address the relief that the plaintiff is seeking? The plaintiffs are seeking. You asked first that the election be stopped. And are you asking us to overturn the result of the recall election, direct the removal of the replacement from the school board, and order a new election with fully translated material? No, Your Honor, we are not. That would be the injunctive relief portion of the case. What we seek from the Court is the declaration that Section 203 does apply to the recall petition. But there is no recall petition before us now. You're talking about a hypothetical recall petition that is not currently being circulated, aren't you? It is our position that it is not hypothetical because it is capable of repetition and evading review, meaning that it is quite likely at this point the plaintiffs remain registered voters and remain limited English proficient. Help me with this. We have a whole lot of cases where we actually do review election challenges after the election. We say they're not moved because they're capable of repetition, yet evading review. We also have a large number of election challenges where we review them. And they don't evade review. I guess the California recall was the most dramatic, but, gee, every election time we have a whole bunch. What is the sorting doctrine? Well, we would urge the Court to place this case into the first category. I can't tell which category is which. What doctrine sorts out which is which? Well, because this was a local election, it is unlikely that it would have had the kind of visibility that it would have been able to move through the entire process, including en banc review, if necessary, prior to the election. I don't know. I've had some on motions and screening. I'm sure we all have, where it's elections nobody ever heard of. It wasn't elections with a whole lot of news cameras. Well, perhaps the proof is in the pudding. In this case, plaintiffs were unable to complete the process of review prior to the election being held. And so here we are today with what we believe is a very live and compelling issue with respect to whether or not the petitions must be translated and provided to the voters so that they can make an informed decision at this critical point in the process. But the problem we have is that we don't have a petition before us. How do we know that the next petition that comes down the road won't be transcribed in more languages than English? Are we to assume, as practice, that past practices will be followed in the future? Well, there are no new practices that have replaced the old practices in the sense that the covered jurisdictions are not at this point translating. The registrars are not making these forms available translated. So would you point us to evidence beyond the record that was before the district court of what other local election officials have done since this litigation commenced? Is that what you're asking us to do? No, Your Honor. We would request that the court rule on the record before it. And there is simply no evidence that the practices have changed. The form that is available from the Secretary of State and that is then subsequently made available by the registrar is in English. And circulators cannot bring back something that, for example, is all in Spanish and have it approved for circulation. Well, is it your position that the actual form itself, which, as I understand it, prescribes the format of the petition, must also be translated into multiple languages? Yes, Your Honor. It's both. And with respect to the State form, correct? Yes. It's the State model form. And then the registrar gets it out here. How many languages would the State, the Secretary of State, which I assume has responsibility for that form, How many languages would the Secretary of State in California have to translate the form that simply gives instructions to the people who are interested in circulating it? California is covered statewide for one language, and that's Spanish. So it would be a Spanish translation. But with respect to the form itself, it is our contention that it is much, much more than simply a set of instructions. In fact, the State dictates almost exclusively what goes on the recall petition form. The State decides what the sections are, what the headings are. It is essentially a fill-in-the-blank form, and that is why it is provided by the State. The large bulk of it is a State-mandated set of words, and what the voter sees is primarily a State form with certain areas that have been filled in with names and with highly structured language regarding the fact that a recall election is being held. In fact, in the case at hand, proponents of the petition only really put in 82 words of their own text, which was the reason for the recall. The rest of it did not. But that has to include the office, the official's answer as well? Yes, it does. And that is also a short paragraph. It doesn't come from the proponents. It comes from permanent officials. So the form has to include both the reasons for the recall and the elected officials Yes, that is absolutely right. and the target of the recall answer. Those are the two parts of the form, really two paragraphs there, that will differ from recall to recall as the petition is circulated. And then, of course, the filling in of names and other things like that. The fact that some private information goes on to this form does not take the form out of the realm of being provided by the State. I think you've slid into the merits, and before you get too far down the road, it would help me on the mootness point that just Tom and just Clarence were asking about if you could give me just a very quick rundown of the sequence of events here, as far as you can pin down. When was the petition approved for circulation? When was the lawsuit brought? When was the election held and so on? You might not have all those dates at your fingertips, but maybe you can check them out and let us come as close as possible. I will give them to you as best I can recall. I understand this is probably not something you'd like to be asked about specifically, but I'd just like to know how quickly this moved along in the district court. In April of 2002, the recall proponents began their process by publishing in the newspaper a notice of intent to recall. And then also in the spring, I believe, perhaps, you know, in April, that was when the petition began to be circulated. Prior to that, the notice of intent was published, and the targeted officials And that's something that's required by state law as a condition of starting a recall. Yes. And is it your contention that that needs to be bilingual as well? Well, it is something that is done exclusively by private parties. I'm asking for your position. The case isn't before the court, but if it were before the court, it would be my position that that strictly worded statement that this is a notice of intent to circulate a recall petition with a fill-in-the-blank for the target's name and the proponent's name would have to be translated. What you're saying is you didn't challenge us in this case. Okay. That's really all I wanted to know. I'm sorry. So this is not an issue in this case. But there was a notice published in April. Yes. And when was the petition? When did the petition start to circulate? It started to circulate around April. In March and April, the notice was published and the target's response was collected. So whatever the State officials did in approving the petition happened in about April? Yes. Of what year? In 2002. And then the petition was circulated over the summer. It was turned in in September. And in either September or October, the petition was certified with a sufficient number of signatures, and the recall election was called for February 4th. Plaintiffs filed their case. 2003. The election was set for 2003, February 4th. Okay. Plaintiffs filed suit in December of 2002 and received a denial of their request for TRO, I believe, on Christmas Eve, 2002, December 24th. And then in January, the claims were dismissed on a motion from Ms. Martinez, who was a party in interest. And then subsequently to that, the claims were dismissed in the spring of 2003 as the motion to dismiss was brought by the county. And then the court filed the case. You did not appeal the denial of the TRO? I believe that we did, Your Honor. I'm asking a question. Did you? Yes, we did. What happened there? I think my opposing counsel can give a better description of this, but the appeal was not heard. It didn't result in a decision in our favor, and we did not seek en banc review of that. It was in a procedural posture that we did not seek en banc review. But the election did occur on February 4th, 2003. Is that correct? Yes. The election occurred, and the targeted official was recalled. Yes. Excuse me. This is Judge Fischer. If I could ask a question and also make a procedural comment, if people could stay close to the mic. I have a question about the role of the Department of Justice in all of this, both specifically in this case and generally, since the panel and the parties rely or dispute the Attorney General commentary, which refers to petitions. Did the Justice Department in this case ever express any interest or were they asked to about the fact that the Voting Rights Act was not, in your view, being implemented? And have they ever done so in any of the many elections that have transpired over the years? And what do we make of it if they have not? The Department of Justice did not weigh in in this particular litigation. I'm not sure if they were asked. They have a fairly small number of lawyers who do enforcement work under all of the statutes that they enforce, and we would certainly urge the Court not to interpret a lack of a lawsuit by the Justice Department as any comment on the merits of this litigation. But if the Voting Rights Act applies under Section 5, don't you have to petition the Attorney General to approve any changes in the interpretation of his understanding of whether or not these petitions and the instructions concerning recall petitions must also be translated into other languages than English? Yes, that would certainly be the case. If California decided to make changes in its petition process, it would have to preclear those changes under Section 5 of the Voting Rights Act. That wouldn't be something that would be done by the challengers, but something that would be done by the jurisdiction that's covered. Would a challenger bring a complaint to the Voting Rights Section of the Department of Justice, as you did in the Federal District Court, asking the Department of Justice to declare that this particular practice is susceptible to the position that you're urging upon us, which in a covered jurisdiction would require translation? No, Your Honor. That wouldn't have been appropriate in this case, because a Section 5 enforcement action only can be brought by private parties when the state or the jurisdiction has made some kind of change and not precleared it. And because here we were challenging an ongoing practice of failure to provide translations, there wouldn't have been the grounds for a Section 5 enforcement action. That's something that would happen later on if there were a change. I'd like to, if I might, move to the merits and address the question whether or not recall petition forms are related to the electoral process. Section 203 of the Voting Rights Act requires translation of registration or voting notices, forms, instructions, assistance, or other informational materials related to the electoral process, including ballots. When Congress enacted this language, it did not stop at voting documents. It actually continues on in its sentence. It's more than just registration or voting notices and forms. It also includes something other than that, which is material related to the election process. If the petition fails and you can't get enough signatures on the recall petition, how does that affect the election process? It never gets on the ballot. That's right, but it is part of the election process, because the voters themselves have the right to participate at this point in the process. Because a recall can only happen if registered voters decide that it will happen. This is a very important part of the electoral process, that everybody has an equal right to participate in, which means that if a petition is being circulated and you as a voter are approached, you should have the same opportunity as any other voter to read and evaluate and decide whether or not to sign. That is activity in the electoral process. But under that theory, in order to circulate an effective petition, you would have to approach every registered voter within the jurisdiction with the petition in order to get their assent or their opposition to signing the petition. That's not required by the law, is it? No, Your Honor. That is not our position. Our position is not that you have a right to be approached with the petition. But if you are approached with the petition as a registered voter, you have a right to read it and evaluate it on the same terms as any other registered voter who is approached with the petition. So the perspective from the voter is, if you happen to be given the petition and asked, please read it, please consider it, please engage in this part of the electoral process where you decide whether or not there will be an election and what will be on the ballot with respect to the recall, that you have an equal opportunity as anybody else who sees that petition. Would it be permissible for the proponent of a recall petition to write it in Spanish and then solicit only registered voters for whom Spanish is the primary language, deliberately excluding those who speak any language other than Spanish? Well, Your Honor, we don't think the petition would ever be allowed to be circulated if it were only written in Spanish. Right now you cannot go to your registrar with, say, a petition exclusively in Korean and have that certified for circulation. So your position would be that that petition would have to be translated into at least English as well as Spanish? That wouldn't be required by the Voting Rights Act, but it would certainly be required by common sense and probably by California Election Code, which sets out. Now wouldn't, as a matter of freedom of speech, circulators be perfectly free? Suppose they had a petition that they thought would be very appealing to other portions of the voting population in that particular district. Wouldn't they be perfectly free to stand at their card tables at the shopping center and talk to passersby in Spanish? And if the passersby did not apparently understand them, just let them go? Canvassers typically try to talk to people they think will agree with them so that they won't stir up opposition and they'll just get turned out by supporters. And I'm thinking just as a matter of freedom of speech, the petitioners would want to do something like that. Well, circulators do target different kinds of people when they're seeking to get signatures, and that's not really the issue that's been raised in this case. The issue in this case is whether the petition form itself, what the voter sees when ultimately approached and agrees to read and consider the question, whether that is acceptable or accessible to the voters. I would think if I was trying to sell something as a petitioner back, you know, before the black robe excluded us all, and it were something appealing to Spanish speaking people, but not many Anglos, I'd have a whole lot of poster board with all the stuff written in Spanish on it next to my card table, and that would be that. The Anglos would stay away. Well, I don't know if the Anglos would stay away. They might speak Spanish, too. But that would certainly be within the realm of permissible private conduct is targeting certain people or maybe targeting people in the neighborhood where, you know, an undesired development is going to go. Those kinds of activities are different from what we're focusing on in this case, which is does that petition form, which is so strictly regulated by the state, have to be accessible to people in the language minority groups? You're arguing for access, but, of course, your plaintiff, your client is really complaining of too much access. In other words, I signed this when I didn't really mean to. I would have preferred not to have signed it at all. I wonder if we're talking about a right of access when that's the situation. There are some unusual facts in this case related to some voters having been misled. But putting aside the question of having been misled, I think the root claim is that the plaintiffs would have wanted to participate on an equal footing with others by being able to read and understand and consider whether or not to sign the petition. The burden on the petitioner, the one who's circulating the petition, assumes the burden that the petition cannot be understood by a certain portion of the electorate. That's a burden that the petitioner bears, and it is a cost of exercising a right of petition. But for us to impose additional requirements on the petitioner, it seems to me, may even invoke First Amendment concerns. My concerns would not be under the right of free speech, but under the right of petition. That is that the State is now imposing additional burdens on those who are circulating petitions. Why can't the petitioner decide what burdens they will bear and what burdens they won't bear? Two answers to that. Quickly, first, yes, there is a very important rights of First Amendment exercise here, as well as participation in the voting process that are raised in this case. But California regulates in so many ways how that speech and right to petition is carried out by dictating the form, by dictating elements of the behavior of the circulators. You can't cover up the Second Amendment. So are you arguing the petitioner is now engaged in State action? No, not in this response, Your Honor. What I'm arguing is that these rights are carried out within a framework of regulation. And what we seek is an additional aspect to that. Not that the circulators would have to do the translation themselves. We believe the burden is on the jurisdiction. But that now circulators, in addition to all of the other requirements that they must meet while exercising their rights, must also carry a piece of paper that happens to say across the top in various languages, this form is available translated. That is not a heavy burden, and it is consistent with the other regulations on the right to petition that are embodied in the California Election Code. Similarly, besides rights that are raised by the circulators or the petitioners, we don't want to lose focus on the rights of the voters, the people in whom the power is vested, to decide whether or not there's going to be a recall election and who's going to be recalled. Does the State provide forms in Spanish? It does not, Your Honor. The model of the State does not. I mean, would it accept petitions signed that were written in Spanish? The petitions would have to go to the registrar. Yes. And do they approve Spanish forms under California law? We only have one incident of somebody trying it and being rejected, Your Honor. It is not our understanding that a Spanish-language form will be accepted by the registrar. Or a bilingual form? As long as it had English on it, I don't think there's any impediment to having a bilingual form. The code is silent. But there is a problem, of course, because the election officials presumably speak and read English, whereas if you have, I mean, I suppose you could find somebody who speaks Spanish there, although not necessarily somebody who's a competent translator. There's a big difference between being able to speak the language and being able to, you know, to be able to translate it in a proficient manner. And certainly when it comes to Korean or Vietnamese or any of the southern languages that are more exotic, I think it would be difficult. So wouldn't you say you think the state would approve it? But it's not at all clear that they would approve it. They would have to be sure that everything on the form is truthful or, you know, the two languages match. They have the same message, I would guess. They wouldn't approve a form that had a bunch of scribbling on it that they don't understand. So wouldn't you, in fact, before the state could approve that, maybe that's something I would ask the state, but I would imagine that before the state could approve a form like that, would approve a form like that, they would have to have a procedure for ensuring that the translation is accurate. And to do that, getting back to Judge Collins' question, they would have to get approval from the Justice Department. Am I — does that match your understanding of how things work? Yes, Your Honor. The question whether or not a petition can be submitted for approval in a foreign language is not before the court. And I think it's sort of an open question what any particular — I think my colleagues asked the question, so I think it is before the court. And before me as well, Your Honor. I think it was at Vibium. But we don't have to decide it in any — I agree that we don't have to decide it, but nevertheless, it's something that might be there. So you're not sure about the answer? I don't know what any particular registrar would do, because these petitions, of course, are submitted at the county level. I don't know what a registrar would do. However, the requirement of translation that plaintiff's appellants are seeking are already in counties that do these translations in these languages. So to speak for just my last moments on the practicalities of the issue, anything submitted in Korean, for example, as suggested by the court, would be to a county registrar's office that already translates things into Korean, such as ballots and voter pamphlets and things like that. So this is really adding a form and some language to the obligations of jurisdictions that already do these translations in these languages. May I ask a question, Judge Fischer? A quick question somewhat related to this. Under the Election Code 11-020B, the requirement is that there be a statement not exceeding 200 words in length of the reasons for the proposed recall. Two-part question. One, if that were in Spanish, would the certification not be allowed? Apparently you're suggesting that there's not a definitive answer on that, but you suggest perhaps not. And in any event, what do the election officials do under that authority other than making sure that there is a statement and it does not exceed 200 words in length? Do they ever edit the content of that statement? Is there any evidence about that? Well, the registrar plays a very important role in reviewing both the structure of the form as it's submitted as well as the content and is not allowed to let the statement go over 200 words. But that's not my question. My question was, does it go to the substance of what is said, not the word count? The substance of what is said on the statement for the reason or on other parts of the form? I'm just focused on that one section. No, generally I don't believe that the registrar makes changes to the substance. Thank you. But does also check and make sure that it complies in both length and structure and format and the other parts of the form as well. And so you have about two and a half minutes.  The reason, do you want to save your time? Yes, Your Honor, if I might. Thank you. Good morning, Your Honors. May it please the Court. I am Wendy Phillips, Deputy County Counsel from the County of Orange. I'm here on behalf of the Respondents, the County Registrar of Voters from the County of Orange. Since there are three of us on Respondent's side of the podium, I thought I would try and give a brief overview to the Court of our intended division of the argument. I plan to take approximately 15 minutes to address primarily the interpretation of the Voting Rights Act and why we as Respondents believe that minority language requirement does not attach to the circulation of petitions by private citizens. Mr. Schaffer, on behalf of the Santa Ana Unified School District, will speak briefly with regard to the remedy that he sees as appropriate in this case, as it does affect the Santa Ana Unified School District. Finally, Mr. Wucher will appear on behalf of one of the original petition proponents, Ms. Martinez, and he will be addressing the far-reaching implications of requiring the minority language requirement to apply to the petition. It appears that nobody plans to talk about mootness, and that's actually what interests me most. So let me ask you, as I mentioned to your adversary, we have a whole bunch of election cases where we say election challenges are not moot, even though the election's over, because they're capable of repetition, yet evading review. And we have a whole bunch of election cases where they come up on short notice, and we review them and get them all done before the election. And I cannot tell what the sorting mechanism is. There must be some doctrine that says when to use the capable of repetition, yet evading review exception to mootness, and I can't figure out what the doctrine is. Can you help me and tell me a case? Your Honor, I wish I could help you with that. I, like you, have researched the issue of mootness in relation to these cases, and it does seem to be in lots of camps with regard to how they're treated. And it seems to be because of the amount of cases that sometimes address them and other times don't and decide that it's moot, that there is no clear rule on that issue in this circuit. And they, of course – In this case, to decide the question before it was rendered moot, you'd have to have at least an appellate decision before February. Is that a – would have had to have had. You would have had to have had a decision before the day of voting, the day the election was – the results were certified? What would have been the date, you know, where effectively could still have been granted? If the determination of the mootness question is the fact that the election has occurred and we don't go to – That's the question I'm asking. Yes, then it would have been February 4th of 2003. No, no, no. There's no if about it. That's the very question I'm asking you. At what point in – what is the point in time at which nothing we do will make any difference in that election anymore? Your Honor, we would have said at the time that the election occurred, which was February 4th of 2003. Under California law, as you probably know, the California Supreme Court rarely decides the questions of constitutionality of initiative measures until after the election. They say that we shouldn't decide them before, and they try to decide them afterwards. Under the theory that when the election occurs, it's moot, we'd never have any decisions in California, would we? Right, which is why I believe so many cases focus on the idea that the issue is likely to be repeated and is not going to be subject to relief. I don't think you understand the question that Judge Reinhart asked, which I think ties into my question. I think what Judge Reinhart is suggesting is that there is relief that could be granted afterwards, like setting aside the result of the election. That is a relief that could be granted, yes. Okay, so the day the election is held, it's not too late for a court to grant effective relief. So is there some point in time past the election when the — when the — when — at which point effective relief is still possible? And so what is that point in time? Your Honor, I don't think there's a bright-line rule on that, and that's an unfortunate thing. The plaintiffs don't get a decision here in their favor or don't get any decision that the next election, the petitions are going to look exactly the same. Your Honor, I believe that is true. Okay. Yes. So that's why it's — if once the election is over, if you said that it's moot, then the issue would never be able to be reviewed. I believe that is true, Your Honor. And we — I'm not sure you're right in that, believing that. Because if, in fact, you can grant effective relief by setting aside the election a year afterwards, it's just random suggestion. The California Supreme Court regularly reviews elections after — long after the ballots are closed and on occasion sets aside the results. I mean, grants relief. So I — the question I have asked, which you said you weren't sure about the answer, is how far into the future can such relief be granted where a court can come in and set aside the results of the election? Your Honor, under both California state law and, I believe, federal interpretation, courts are usually bereft to actually set aside an election unless there was — I'm not talking about judicial reluctance. I'm talking about at which point in law is a — you know, we can't today set aside the election, the recall election that the governor was — you know, the current governor was — I gather it's too late now, right? So there must be some point in time at which an election becomes so final that even the state Supreme Court or federal court couldn't come in and undo it. But we also know that there are points in time after the actual ballots are cast when it's not too late. What I'm asking you to know, tell me, if you know the answer, is when after an election does — at what point after an election does it become so final that no judicial relief can be granted in that election? Your Honor, I don't think there is a specific rule or case that speaks to that issue. So presumably if we rule in favor of petitioners here, we could set aside the election? What I was going to say is that I think that in this particular instance, to the extent that there has been not only one more intervening election replacing Mr. Lopez's seat on the Santa Ana Unified School District, but I think there have been actually two elections held where the same person was placed in that seat. To go that far back, to go four years in the past and undo the election and the will of the people is demonstrated. Well, I thought you weren't challenged — that your position was this is not a challenge to the election process at all. I'm sorry, can you restate that? I thought your argument on the — I'm trying to kind of get us into the merits so we can hear them. We don't have an unlimited amount of time. I thought that your position on the merits was that this is really not a challenge to the election process at all. We think that is the case. And I believe that Appellee's Council — or Appellant's Council, when she was up here, indicated that they were no longer seeking any effects to the election and that they're merely looking for the declaratory relief to be granted that they originally requested in the — For future election. For future action. How long before an election does the recall petition start? In this case, it did start in March of 2002. And I was going to address that because I believe Judge Kaczynski had wanted a timeline, and there were some timeframes that were in question. It was March of 2002 when the notice of intention to recall happened. The petitions began to be circulated in April of 2002. Then in September of 2002, all the petitions were submitted to the registrar of voters. The signatures were certified as — I'm sorry. I must not have heard. At what point did the — is it the state officials or the county officials act to approve the petition? The county officials would have acted to approve the petition in early April of 2002 when they said that the petition format met the California Elections Code requirements. Okay. I'm sorry. They certified for the ballot? They certified for the ballot in September of 2002. The signatures were certified as sufficient. And the Santa Ana Unified School District actually called the election in October of 2002 and set that election for February of 2002. In relation to the original case, of course, the TRO, as described by Appellant's Counsel, was denied in December of 2002. The preliminary injunction was denied on January 13th, I believe, of 2003. They did file an immediate stay and in conjunction with that stay — I'm sorry, an immediate appeal. And in conjunction with that immediate appeal, they did ask for a motion panel to grant an immediate stay of the election. The motion panel who considered that denied the immediate stay request, and that was denied on January 30th of 2003. So that was the timeframe that — Well, I don't understand how the case is — I mean, how this can possibly fall under the capable of a petition yet evading review. Relief was not only sought but actually obtained before the election. It wasn't the relief that petitioners wanted, but you got an appellate's ruling from a panel of this court before the election was held. It could very well have been the opposite. I mean, maybe not in this case, depending on the merits, but it certainly would have been possible by January 13th or January 15th, a full three weeks before the election, you could have gotten — I'm sorry, petitioners could have gotten relief yanking the recall petition from the ballot, right? Did they get a decision on the merits in January, or — Your Honor, that's what I was going to say. I don't want to make appellant's argument for them, but I imagine what they would say is that there was no decision on the merits. It's not just appellant's argument. I assume you'd like this issue resolved so we're not here again at the next election. Yes, Your Honor. And with that, if I could move to the merits — Well, before you leave that, I'm not sure that we've heard from the county what its position on mootness really is. Your Honor — Do you have a position or not? Your Honor, to the extent that the standard that the cases seem to apply is as expressed by appellant's counsel, that it is subject to repetition and evading review, and that it does appear to be the overwhelming standard in most cases, then we do believe that it is not moot, and we are asking the court's — How about the Hayes-Tilden election? Could the Supreme Court of the United States review that one? I'm sorry. Could you say that? Could the Supreme Court of the United States review the Hayes-Tilden election? Let's try Bush v. Gorin. We're going to review an election. Do that one again? I don't think so, Your Honor, because the court, at least with regard to Bush v. Gorin, has spoken to that issue already. Well, Hayes is not going to run against him. But this — this forum is going to come back again. Not this particular recall issue. Ancient history as far as politics in Orange County go. This particular petition between these proponents and that target, yes, Your Honor, that is true. Let me ask you this. What's the big problem in having a Spanish translation on a petition? You know, you go into a supermarket, you come out, someone's standing there sitting by a card table, they stop you, and they say, oh, you want to sign this petition? It will reduce your taxes. Oh, okay, let me sign it. And if it's not in the language that the voter understands, the minority voter, and there's a very significant Latino, Spanish-speaking population in Orange County, isn't there? Yes, there is. Yeah, a big one. So if they don't understand it, and someone tells them in English, you know, this is good because of that, and they go ahead and sign it, and they're not really getting the full picture from that solicitor who gets paid a dollar a signature, or sometimes more, depending on the wealth of the candidate. And so how are they ever going to know what this petition is all about unless you've got the translation in there? It's in Spanish. Your Honor, we would take the court... That's no big deal. I mean, was the ballot in Spanish here? Yes, all the materials that were provided by the registrar were... Yeah, the recall election was in Spanish too, right? Yes, it was, Your Honor. What's the big problem here? I don't understand it. The question is whether or not the Voting Rights Act requires it. And our position is that... Why doesn't Orange County just do it? I mean, what's wrong with doing it? I think the question is, is it a burden? We believe that it is a burden to the petitioners because the law is unclear as to who would carry the cost of this. And if you're discussing the application of the minority language required... How much is the cost? Your Honor, those facts are not specifically before the court, but I can tell the court colloquially that I heard from some petition proponents... Who are looking for words in Spanish? In five different languages, Your Honor, and I... But they're not just looking for a minority of a certain percentage. Yes, Your Honor, but in Orange County, based on the most recent census data, there are five languages, including English, that have to be translated into. And presuming the minority language requirement attaches to the privately circulated petitions... What percentage of the electorate do those folks who speak those five languages represent? I don't know the specific percentages. All I know is that based on the federal register information, which is based on the most recent census... There is the requirement in the county of Orange alone of Korean, Chinese, Vietnamese, Spanish, and English. And so there's five total languages that the registrar must provide voting materials in. And that's the issue that we believe that the petition itself are not voting materials. The Voting Rights Act goes to the core effect of your right to a vote and have your vote counted. And the language of the Voting Rights Act focuses on, from the start of the registration process, through notification about when a vote will occur, through the ballots provided by the local elections official. But it doesn't speak to private petitioners being burdened with circulating five languages when they're in... Isn't that what we're all about? Fairness? Yes, Your Honor, but... You're cutting out people that speak four other languages. And that probably represents a very significant proportion of Orange County voters. Maybe, I don't know, maybe 50% or more. But my guess, so you're just cutting all those people out. Your Honor, at the... You're getting deceived. At the root of it is the question that signing a petition is not a right. There is no right to sign a petition. If you as a citizen heard that there was a petition circulating, you couldn't demand to sign it. But the question is whether these are materials or information that relate to the electoral process. That's a pretty broad term, relating to the process. Now, something that qualifies for the start of the process doesn't relate to the process? We don't think it does, Your Honor, because electoral process is... And this is a remedial statute to be broadly construed? A remedial statute requires the State to provide certain materials, but not private citizens. That's a different issue. The question is whether it relates to the process. That's two separate points. One, that it's not provided by the State, and two, that it doesn't relate to the process.  Yes, Your Honor. It seems to me that if you wanted to limit materials to something directly a part of the process, you wouldn't say anything that relates to the process. Your Honor, but electoral process is colloquially known as the election itself. It's not the entire process that could be operated by... To qualify for the election itself doesn't relate to the election? But there's no guarantee that it will qualify for election, and it's based solely on the proponent's own will as to whether or not it does. To gather those signatures, every year, many, many initiative petitions, many different petitions that are circulated, never see the ballot because they fail to obtain the signatures. About whether it was relating to the process, all you needed was whether it's provided by the State or a political subdivision. Am I mistaken about the logic of your case? No, Your Honor. We do believe that it's a two-tier standard, and if one applies, it's either not provided by the State or if it's not voting materials relating to the process. All right. And I'm trying to go deal with your second argument. Right. It seems to me your weaker argument, to put it mildly. But we don't need both in order for this Court to find in our favor. So you'd like to abandon the second? No, we're not abandoning the argument. We certainly do not believe, based on Montero and Delgado, which, of course, are the Sister Circuit's 10th and 11th's decision, analyzing whether or not these are voting materials. And we believe those are well-reasoned decisions. I am cutting in. Yeah. I'm sorry. What is the cost, and who bears the burden of paying for the translation? The unfortunate thing is that there is no statute in California that would address that, and it could very well fall upon the Petitioners, because they're the ones who are circulating it, and they're the ones who would have to provide it in the minority language if the minority language requirement does apply in this instance. I'm sorry. Go ahead. Your Honor, I only have knowledge based on one conversation with one initiative proponent, and they said it costs $60,000 to get five translations. How much time are you saving for your two? That's what I was attempting to sit down, Your Honor. Did you wish to ask? Just one quick question. Even if the State bore the burden of translating the materials, would the Petitioners have an obligation to carry those materials with them? Certainly. Door to door. And because The Voting Rights Act would require the Petitioners to carry translated materials with them? Well, if the minority language requirement attaches and the translations are required, then it doesn't make sense that they wouldn't have to have them with them in order for the Spanish speaker, the Korean speaker, the Vietnamese speaker to understand the petition that is presented to them. Would you like to give the rest of your time to you? If I may, Your Honors. Okay. Thank you very much. I just want, you know, the petition process in our State is a very important device for getting legislation on the books. Yes, Your Honor. And our ballots are just loaded with these petitions because we can't get ruling The State legislature, you know, just doesn't get involved in some of those issues. There's no dispute about that. It moves away from them. Just briefly, if I may. We think that the minority People are just excluded from the initiation of that process. We believe the minority language requirement is protected because those individuals have the right to vote and receive all materials on the ballot before they go and vote in their own language. Thank you. Thank you. Good morning. My name is Bill Shaper. I'm here on behalf of the Amici-Santa Unified School District and its Board of Education. We support the Appalese argument that's been presented in their briefs. We will focus our portion on the argument on the particular concerns this litigation presents to Amici District and its governing board. In the event the court finds Congress clearly intended the translation requirements of the VRA to fully apply to any or all steps in the process to cause a petition to be circulated and any type of election to occur resulting from therefrom, we request the court to specifically hold that no remedy for the violation can invalidate the original recall election or cause a new one. Nobody has argued that. I don't know why you're burning up time making a point that nobody is or refuting a point that nobody has made. They're only asking for declaratory relief. Well, it – well, there's some dispute as to whether Mr. Lopez – You don't have to get up and talk. Okay. Now, we'll waste your time for you asking a bunch of questions. All right. Well, we just want – that's why we're here, just to make sure. We'll tell you about freedom of speech. Go ahead. But they are only asking – I'll defer to Mr. Wucher then. Thank you. Thank you. Thank you, Your Honor. Let me – let me try and just add a couple of cents on some of the statutory interpretation question because I think one issue is being overlooked here. It was – I think perhaps – You represented the petition. We represented the original proponents of this recall petition. Exactly. I'm asking just previous questions. What's the big deal? Well, I think there's a big deal in three respects. In some instances, there is, in fact, a great burden to force the translation. Now, in a recall petition in a jurisdiction where there's only one language that needs to be translated into, nobody's going to say that getting that translation is a huge burden financially or even time-wise. The elephant, of course, is that – That's the case we have here, right? That is the case that we have here. Of course, the burden here was nobody told them they had to do that until after they'd already gathered all their signatures, handed the petitions in, and were three weeks from an election. Look at Martha and find out what – you know, that's not a good argument. The second issue, but I will point out that in many other instances, the burden, for example, with respect to the initiatives that Judge Pragerson mentioned that are the bulk of the petitioning activity in the state of California, they can be tremendous burdens. And I think counsel mentioned there was a petition in Loma Linda, one of the jurisdictions where it had to be translated into so many different languages that it would cost $60,000 and would literally take six months. What she said is she talked to somebody who mentioned the figure $60,000. I don't believe counsel is under oath. That was hearsay. I mean, you know, you could say any number whatsoever. Is there anything in the record documenting a burden? There's nothing in the record in this case. The answer is we don't have anything. You do not have any idea whatsoever that you couldn't just go to your – Well, who would have the responsibility for assuring that the translation was competent and accurate and not itself misleading? Presumably, if there were such a requirement, it would be the State that would have the burden of having to determine that the translation was accurate. But it does lead to potential litigation. It's the same people who determine the rest of the ballot material in the county clerk's office. I'm sorry, each of the – But this only applies when you have that burden anyway with respect to all the ballot material. Yes, over a much – obviously, a much more leisurely pace with respect to having the State resources, which is the second – 400 words. If you really want us to believe it's going to cost an arm and a leg to translate and certify the translation of at most 400 words, I think – I did – I preface this by saying on a recall petition in a jurisdiction like this, in this particular case, I do not think the financial burden of translation is what is the key. What is potentially a problem is the timing of it. I'm happy to say that, but – Okay, I'm sorry. I should have made that clear when I started out. But – okay. Timing is an issue. You, for example, raised the question about the notice. The recall petition process starts when a citizen or at least ten proponents serve on the officer's sought-to-be-recalled, their notice of intent to recall, and then file that with the county office. Now, is that a document – presumably one would argue, Judge, it relates to the electoral process in the same way that the petitions themselves are. Is that a document that itself needs to be translated? If that's the case, how does it get to the State to perform that translation at the time it also has to begin the process by being a completely private transaction between two individuals? The timing can be critical in a lot of these respects, and I think this also relates to the mootness issue that there were a number of questions on. Do you have a position on the mootness issue? Yes. I believe that in most instances the – although not in this particular case, in most instances these types of disputes will be capable of repetition certainly and will evade review. And the reason is that for initiatives and referenda, for example, there's a very short time period under which a determination must be made as to whether an object is – a proposed measure is going to go on the ballot or not. But this case is moot? Is that what you're saying? Well, this – in this case, certainly the injunctive relief is moot. The declaratory relief I do not believe is moot because I do think the same issue is capable of repetition. It obviously depends upon how soon the challenge is brought, which gets into a whole remedy issue here. You don't want to waste all your time on that. Your answer is the declaratory relief? The declaratory relief is not moot would be my position in this case, yes. But I want to get back to the burden issue as well because I do think in this particular case it does not – it's not a great burden. In this case the issue was the – You got one and two. I'm sorry? You had three points and you got one and two. I know. What's three? The second was the timing, and that is when does this translation have to occur and who does – all right? And the third is related to that, and that is the uncertainty of how this whole process would fit in with the state process for not only the recall but the initiative referendum. For example, a referendum has to be – the petition has to be drafted. It has to be circulated and submitted within 30 days from the date that the ordinance is enacted by the city council at a local level. That, in fact, would be in many instances completely an impossible deadline to reach. If, for example, you're in the city – the county of Los Angeles where you need to have a translation of what could be a very lengthy ordinance itself and under the full text requirement of California law, you have to not only have in your petition the actual text of the ordinance but any other materials that are referenced in that ordinance. So a lot of these referendum petitions are literally 60, 150, 200 pages long. And if you have to translate that into six different languages, that just simply cannot physically be accomplished within the 30-day period. To make shorter petitions. I'm sorry? To make shorter petitions. Well, if – It requires bilingual briefs. We get shorter briefs. If we could force the legislatures to make shorter laws, we'd have shorter petitions. But unfortunately, in a referendum context, that's not our choice, which, of course, is the irony of all of this. The laws themselves are adopted in English. Nobody requires when the legislature passes the law that it has to be in a language other than English. And yet if we want to challenge that through a referendum petition – Legislators have enough trouble speaking English. I'm sorry? Never mind. If one wants to challenge it through the referendum petition, the burden would have to plainly be on the proponents of that measure. And this, I think, gets to your point, Your Honor, about the burden on the First Amendment petitioning rights here. They would definitely have that burden. I'm talking about referendums. Because the decision in this case will undoubtedly have a bearing on what happens and how it's interpreted with respect – But referendums present a very different question. Very often those things are put a little down by the legislature, aren't they? No, I'm using referendum in the technical sense that it is a protesting the adoption of a law that the legislature, the legislative body already enacted. There is a – There are referendums that are put on the ballot at the behest of the legislature, right? It's commonly referred to as a referendum, but it's not typically – You don't need petition signatures for that one. If the legislature puts it on, we don't need any petition signatures. I see. I see the – Your time is up. If you'd like to have 30 seconds in which to – I would like to get back to the point that I wanted to try and make initially, and that is Congress, you know, has a role in this debate here. And there's been no mention in the 30 minutes up until now about the congressional role. Judge Fischer asked and pointed out, what has the position of the Department of Justice been in the 30 years since this provision was added to the Voting Rights Act? And the position has been that they have never challenged. They've not only followed the lawsuit, they've never indicated that there's any reason to believe that the Voting Rights Act requires petitions, recall petitions, initiative or referendum, to be circulated and translated into multiple languages. Congress has also – That doesn't really mean anything, because they've just got a small staff over there and they're running around the country. Your Honor, no matter how – Plenty of work to do. No matter how small the staff, I believe the Department of Justice was aware that in California a year and a half ago there was a recall election going on. I don't think you can attribute their lack of interest in this issue, their lack of action in this issue to the fact that they were not aware of it or their staff was too small. But more importantly, Congress was aware of it. And in 1988, two circuit courts of appeals held that privately circulated petitions are not subject to the Voting Rights Act. Congress reauthorized it four years later and didn't say a word about reversing those decisions. They implicitly accepted those petitions. And as we stand here today, Your Honor, there is a very – Your Honor, there's a very active debate going on, as you're certainly aware, about the reauthorization for the Voting Rights Act. And if there's a change to be made, if there's a clarification to be made, Congress should be the body making it, not this Court. Thank you, Counsel. Your time has finally expired. I have two minutes. We'll give you a little extra time. Thank you. First of all, the burden, clearly under the statute, the burden of translation falls on the jurisdiction that is providing the form. The statute says whenever any state or political subdivision, and then at the end it says it shall provide translated material. Counsel, this is Judge Gould. Could you please address your argument, why is it that we should consider recall petitions to be provided by the government? Recall petitions are provided by the government because the question really turns on what the voter sees when presented with the recall petition and who determines what the voter sees. It's not as much whose hand is showing the petition. It isn't an analysis of provided by because a circulator is showing it. It's what does the voter see and who decides what the voter sees. And the state strictly regulates and strictly determines what goes on in that petition form. As I mentioned earlier, only 82 words from the proponents are on there. It certifies airplanes for airworthiness. You can't put a plane in the air without an FAA-type certificate. Does that mean the government is providing airplanes? That may not be the easiest analogy for me to deal with, Your Honor. But I would say — That's why I picked it. Of course. I would say that, you know, the way to sort of analogize it is, is the government telling you how many seats to have on the plane? Is the government telling you what color? They provide a template of the airplane? Well, no, but in this case, the government does provide the template for the form and says the font, the color, the size, the statements, the words that have to be used in the statements and the notice of intent, that there has to be a target response. So much of this — I can assure you that there are many, many requirements to putting an airplane in the air, and they are quite specific about it. We tell you what font to use and how many words in your brief. That doesn't mean we write them for you. No, that's true. But my briefs aren't 82 words long, Your Honor. And those are the number of words — I agree. We wish. — that have to be translated in this case. Yes, I know. Only having a problem being succinct as it is, Your Honor. Counsel, if the State were to undertake to translate these, what's the remedy if the Petitioner fails to carry them with him? When the Petitioner goes door to door, he's got six translations, five translations, whatever the number of languages in Orange County. What's the remedy if the Petitioner fails to carry something in Korean that carries the other languages with him? The remedy might be the invalidation of the petition. The State would be required to do that under State law or by virtue of the Voting Rights Act? By virtue of the Voting Rights Act. That's the issue in the case of Section 203 and what it requires voters to be able to see as a result. I wanted to address the — really what I think of as the parade of horribles that have been raised by opponents who essentially don't want to copy and don't want to carry translated recall petitions. The burden is quite minimal, in fact, to photocopy something that isn't very much longer and maybe carry one extra sheet of the translated information and not have it on every petition, but say across the top this is available in Korean and then have that extra piece of paper. The burdens are not great. They were all raised by opponents of 203 when Congress decided to enact the statute. They were raised and rejected. And for that reason, we urge the Court to follow the plain meaning of the statute. Thank you. Thank you, Your Honor. It's just argued and submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Pregerson, Canby, Reinhardt, Kozinski, O'scannlain, Rymer, Kleinfeld, Fisher, Gould, Paez, Berzon, Tallman, Bybee, Bea